is Warnell v. O'Malley. Mr. Duncan. Good morning, your honors. May it please the court. Dana Duncan on behalf of Brenda Warnell. I thank the court for accommodating my infirmity. I do have COVID and hopefully my voice will hold out. At issue in this case is whether the ALJ sufficiently articulated support and consistency for the assessment of a treating source, a consultative examination, and a functional capacity evaluation, as well as two state agency assessments under 20 CFR 404.15C. Mr. Duncan, before you go too far down that route, can I just clarify something, please? Sure. In your opening brief, you seem to be arguing that the 2017 regulation that noted that an ALJ no longer has to afford a treating physician's opinion, controlling weight, somehow imposed a heightened burden on the ALJ to articulate consistency and supportability. You backed away from that a bit in your reply. Is that an argument you're advancing, or are you agreeing that there's no heightened duty? I'm agreeing there's no heightened duty. After having reviewed other circuits' decisions that have been issued in the last few months, I'll take away that argument. Okay. Thank you. Thank you, Mr. Chairman. As long as we still have Chevron and Kaiser Standard, we should be looking at their assessment. What I would continue to point out, and what I'm going to be arguing in large part is, is what the new regulation does, it takes out the pecking order that has existed for treating sources and then examining sources and such. It's placed everybody at will. Unfortunately, what I think we've also lost sight of is that the commissioner in the Federal Registry said that it does not take away all of the responsibilities of applying the checklist factors, which this court has repeatedly held need to be addressed. And that requires, in part, a level of articulation and adoption or outlining those points. In this particular case, again, the standard of review is whether a reasonable person. That implies a certain level of logic. It also implies that the court either has the ability to see the logical bridge or follow the path of reasoning, whichever you want to say. The two most consistent or the two most important points are supportability. And the statute states, or the regulation states, the more relevant the objective medical evidence and supporting explanation. It doesn't say one or the other. And what ends up happening in this particular case is the ALJ repeatedly makes reference to the failure of the doctors to state what the basis is in their report. That's not the standard. That's not what the statute says. It says that the ALJ shall assess the record. So if a doctor is pointing to repeatedly in his records problems or noted issues on the MRI or on an X-ray or medical examination, simply because he doesn't state it in his opinion, does that mean that he's allowed to just disregard the opinion? Now, the more important point is also the consistency. The statute, again, or the regulation, again, says the more consistent a medical opinion is with the evidence from other medical sources. We have three opinions in this case that are right on point. We have Dr. Roth, a longtime treater, who said she was less than sedentary. We have Dr. Lamar, the state or the commissioner's own hired consultative examiner, who places her at sedentary restrictions. And then we have a functional capacity evaluation, which is an objective test by precedent in this circuit that also places her at sedentary. The judge never evaluates the fact that we have three medical opinions that at least place her on sedentary. And given that she turned 50 during the relevant period with no past relevant work, we would be talking about at least a partially favorable decision as of her 50th birthday. Mr. Duncan? Yes. I'm sorry. I understand the argument you're making. I have a hard time aligning that with the ALJ opinion itself. Because when I look at the ALJ's opinion, page 11 of 14, or the short appendix at page 14, the ALJ is absolutely talking about Dr. Lamar, Dr. Roth, and the physical therapists. But more importantly than talking about them and describing their opinions, in each instance, the ALJ points out that the two physicians and the PT, the physical therapist, observed normal range of motion, normal strength, normal reflexes, etc. And so there is a reasoned explanation for why the ALJ is not crediting their ultimate opinion. Because it's inconsistent by the ALJ's reasoning with what the ALJ found in the records. So it's nothing ignored. Well, let me point out, Judge Scudder, the problem with this is that the ALJ, when he's citing this, cites general citations, general exhibits. He does not provide specific points in the record that show this. He also does not explain how these things. For example, having range of motion in most joints, she's being treated for a cervical spine condition, a lumbar spine condition, a bad shoulder, arthritis in her knees, and chronic pain syndrome. There's nothing in any of these other findings that show this. Mr. Duncan, the ALJ, earlier in the opinion, when she's discussing this specific evidence, does give specific pages. To the extent specific pages are required, why would she have to reiterate the specific pages that she talked about earlier in the opinion when discussing this evidence? Because those specific pages have to be adopted and discussed in general. What requires that? Mr. Duncan, what requires that? The ability to do an informed review. What the judge is by doing that is by just stating general assessments. Have we ever said that? Has this court ever said that? That you have to give specific pages and you have to give them twice if you've given them earlier in an opinion? The court has said in the Moon decision that it should not have to scour the record to support the ALJ's decision. And that's unfortunately what I think I'm saying. You can respond to this. I mean, you do this. This is what you do, Mr. Duncan. I have real concern with our court announcing a pinpoint citation mandate for ALJs. And this work is, the ALJs, as you know, they're loaded with work, etc. We're basically going to promulgate like an order writing rule or an opinion writing rule or something like that. That seems very dangerous to me and unnecessary. In my brief, I outlined in detail the cherry picking of the records and the specifics of the general findings that the judge made that do not necessarily have any substance. For example. That right there. I'm sorry for interrupting you. That is a fair argument. You'll either prevail on that or you won't prevail. But I don't know why arguments like that would lead to encouraging the Seventh Circuit to require pinpoint citations. Or the ALJ's opinion reflects legal error. That seems very dangerous to me. I understand your concern. The only concern or the only reason I'm arguing this point is that it makes it very difficult for the federal courts to review this and know specifically what the ALJ's rationale or reasoning is. Especially when we, what I'm worried about is courts having to speculate in order to support it. As I noted that at least on two occasions, the judge outlines, he makes these findings that state. Let me just, I'm skipping ahead. Well, I'm not finding it right off the top here, but he makes reference to the fact that he lists a whole broad range of medical conditions that do not support his. Thank you, Mr. Duncan. Okay. Ms. Jeffrey. Good morning. May it please the court. I'm Tia Jeffrey representing the Commissioner of Social Security. To just from the beginning address the court's questions regarding the pinpoint citations here. We, of course, would agree that it is not a standard that the court should set that mandates pinpoint citations in the ALJ's decision. But as set forth in my brief here, the ALJ did provide those pinpoint citations earlier on the same page of the discussion regarding opinion evidence. The ALJ cited to the exact same exhibits, exact same examination findings, and just didn't repeat the pinpoint citations. So the court can trace the path of the ALJ's reasoning in this case. In this case, the ALJ was faced with four different competing opinions. She carefully evaluated the supportability and consistency of each of the opinions before deciding their persuasive value. That's what the regulations and this court require. Despite this, Ms. Warnell has challenged the ALJ's evaluation of every single opinion in this case. And she asked the court to reweigh the evidence and find that she is more limited. But this court has established that it will not reweigh or substitute its judgment for an ALJ's well-supported decision. Can I ask you a factual question? Yes, partner. And it's okay if you don't know, but she clearly had a substantial neck surgery in 06, correct? Yes. Do you know whether she had surgery after 06? But, you know, of a material nature. Your Honor, I'm not aware of another surgery following that. Okay. No, I was just looking at what was going on in 2018. And it just wasn't clear to me whether she had another back or neck surgery in 2018 or not. But to the best of your knowledge, as you're standing there, you can't think of anything. I can't, Your Honor. I'm not aware of another neck surgery. But to that point, I think, you know, counsel has noted that the primary diagnosis and the severe impairments here were with regard to neck pain and then she had some lower back pain. But the longitudinal record was showing that Ms. Warnell still maintained a normal gait, full strength, and range of motion. And so when considering the opinions in this case, we had three opinions noting that Ms. Warnell was limited to sedentary or less work. But the record was showing that she still maintained the ability to ambulate effectively and still had full strength. So the ALJ reasonably found that those opinions were just inconsistent with the record. Turning to just a few arguments regarding each of the opinions themselves. I think one of the most important opinions in this case that the ALJ found persuasive was the state agency physician opinion from Dr. Corcoran. Dr. Corcoran actually issued the most recent opinion in this case. It was issued a few days after Dr. Lamar's consultative examination. So along with the other state agency physician, Dr. Corcoran had the opportunity to review the broader record, including all this evidence that we've discussed showing normal gait, strength, and range of motion. If the court doesn't have any further questions for me, I would just rest on the arguments in the brief and ask the court to affirm. Thank you very much. The case is taken under advisement and the court will be in recess.